UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAVEHUGGERS LLC and HELINA BECK,<br><br>                    Plaintiffs,<br><br>v.<br><br>ARMANDO QUINTERO, in his official capacity as Director of the California Department of Parks and Recreation,<br><br>                    Defendant. | Case No.: 25-cv-2215-RSH-BJW<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>[ECF No. 10] |

Before the Court is a motion to dismiss filed by defendant Armando Quintero, in his official capacity as Director of the California Department of Parks and Recreation ("CDPR"). ECF No. 10. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court grants in part and denies in part Defendant's motion.

## I.   BACKGROUND

The instant action challenges the constitutionality of California Code of Regulations, title 14, section 4331 ("Section 4331") as it pertains to plaintiffs Helina Beck and Wavehuggers LLC's  ability to offer paid surf lessons on California state beaches.

## A. Plaintiffs' Allegations

Plaintiffs' Amended Complaint alleges as follows. In 2013, Beck formed Wavehuggers, which provides year-round surfing lessons in San Diego County, Orange County, and Los Angeles County. ECF No. 8 ¶¶ 38–39. Beck currently serves as the Chief Executive Officer of Wavehuggers and is herself a professional surfing instructor. *Id.* ¶ 12. Plaintiffs do not solicit business in person. *Id*. ¶ 42. Instead, Plaintiffs market their services online and prospective students may book a lesson through Wavehuggers' website. *Id*.

On several occasions since 2021, including as recently as March 2025, Beck inquired with local State Parks officials about obtaining a permit, agreement, or concession contract to provide surf lessons at Carlsbad, South Carlsbad, or Cardiff State Beaches. *Id.* ¶ 25. Each inquiry was denied. *Id.*

In March 2025, Beck received a cease-and-desist letter from the CDPR. ECF No. 8-1 at 2. The letter states, in relevant part:

> It has been brought to our attention that you are offering Surf Lessons within on [sic] California State Parks property at Pipes beach at San Elijo in Cardiff, and North Ponto in Carlsbad. Under California Code of Regulations, Title 14, Division 3, Chapter 1, Section 4331, no one may solicit goods or services in a state park without a permit. Since you do not hold a contract or permit to provide these services on state park property, you must immediately cease and desist all commercial activities. In addition, you must remove all advertisements of such services from the internet or other sources.
>
> Typically, the type of service you are providing may be provided through a concession contract issued pursuant to California Public Resources Code Section 5080 et. seq. You may contact San Diego Coast District Office at SDCD.Concessions@parks.ca.gov to discuss the possibility of receiving a concession contract to operate on San Diego State Beaches.

*Id.* According to Plaintiffs, since approximately 2008, only two schools have held agreements to provide paid surf lessons at these beaches and only one school currently holds such an agreement. ECF No. 8 ¶¶ 22–23.

**B.    Statutory and Regulatory Scheme**

*1.    Overview*

Section 4331 is promulgated by the CDPR pursuant to California Public Resources Code section 5003. ECF No. 7-1 at 12; Cal. Pub. Res. Code § 5003; *see Wilson v. Cook*, 197 Cal. App. 3d 344, 349 (Ct. App. 1987) ("Section 4331 was enacted by the Department pursuant to Public Resources Code section 5003 which authorizes the Department to establish rules and regulations not inconsistent with law for the administration of the property under its jurisdiction.").

Under Section 4331:

> No person shall solicit, sell, hawk, or peddle any goods, wares, merchandise, services, liquids, or edibles for human consumption or distribute circulars in any unit, except as permitted by the Department. Such prohibition shall include sales activities that utilize park property or facilities to complete the terms of sale or provide a service as a result of the sale or that effect [sic] park operations, facility use or visitor safety. Also included are sales activities which encroach on the sales rights of a vendor authorized to sell such products, or services pursuant to a concession contract with the Department.

Cal. Code Regs. tit. 14, § 4331. Carlsbad, South Carlsbad, and Cardiff State Beaches are "units" covered by Section 4331. ECF No. 8 ¶ 20; ECF No. 10-1 at 14. "Concessions" are defined by the CDPR as "private businesses operating under contract in state parks to provide products and services designed to enhance or facilitate the park visitor's experience." ECF No. 10-2 at 5.[1] Defendant's position is that Section 4331 bars individuals

---

[1]    The Court grants Defendant's unopposed request for the Court to take judicial notice of: (1) a section of the CDPR's website entitled "Questions and Answers about Concessions"; and (2) the CDPR's Concessions Annual Report for Fiscal Year 2022-2023. ECF No. 10-2 at 2; *see Freshpoint Atlanta, Inc. v. Haywood*, No. 20-CV-1065-MMA-DTF, 2025 WL 2606626, at *2 (S.D. Cal. Sept. 9, 2025) ("The Court may take judicial notice of information on government websites and 'official acts' of government agencies.") (collecting cases); *Chavez v. Allstate Northbrook Indem. Co.*, No. 22-CV-00166-AJB-

from providing paid surf lessons on California state beaches unless they have first secured a concession contract. *See* ECF No. 10-1 at 11.

### 2.    *Bidding Process for Concession Contracts*

The California Public Resources Code "sets forth requirements for awarding concession contracts in the state park system." *Unite Here Local 30 v. Dep't of Parks & Recreation*, 194 Cal. App. 4th 1200, 1206 (Ct. App. 2011).

Section 5080.03 of the Public Resources Code permits the CDPR to "enter into contracts with natural persons, corporations, partnerships, and associations for the construction, maintenance, and operation of concessions within units of the state park system." Cal. Pub. Res. Code § 5080.03(a).

Under the Public Resources Code, the CDPR administers a bidding process for concession contracts. Except as otherwise specified by statute, "all contracts authorizing occupancy of any portion of the state park system for a period of more than three years shall be awarded to the best responsible bidder." Cal. Pub. Res. Code § 5080.05(a).

The Public Resources Code defines the "best responsible bidder" as follows:

> "Best responsible bidder" means the bidder, as determined by specific standards established by the department, that, as determined by the department, will operate the concession (1) consistent with the contract, (2) in a manner fully compatible with, and complementary to, the characteristics, features, and theme of the unit in which the concession will be operated, (3) in the best interests of the state and public, and (4) in a manner that protects the state's trademark and service mark rights in the names associated with a state park venue and its historical, cultural, and recreational resources.

*Id.* § 5080.05(b). As part of the bidding process, the CDPR prepares "an invitation to bid, which shall include a summary of the terms and conditions of the concession sufficient to

DEB, 2025 WL 1757543, at *3 (S.D. Cal. June 25, 2025) ("The Court may take judicial notice of public records and government documents available from reliable sources, including government websites.").

25-cv-2215-RSH-BJW

enable persons to bid solely on the basis of rates to be paid to the state." *Id.* § 5080.06. Notice is given to the public and bids are thereafter submitted under seal. *Id.* §§ 5080.07; 5080.09.

A concession contract may be alternatively awarded through a request for proposal. ECF No. 10-1 at 15; *see Unite Here Local 30*, 194 Cal. App. 4th at 1207 ("If the director of [CDPR] determines it is in the best interest of the state, he or she may forgo the bidding process and use instead an RFP."). In such a case, the CDPR prepares a request for proposal that must include "the terms and conditions of the concession sufficient to enable a person or entity to submit a proposal for the operation of the concession on the basis of the best benefit to the state." Cal. Pub. Res. Code § 5080.23(b). The contract is then awarded to the "best responsible person or entity." *Id.* § 5080.23(a). The "best responsible person or entity submitting a proposal" is defined under the Public Resources Code as "the person or entity submitting a proposal, as determined by specific standards established by the department, that will operate the concession in the best interests of the state and the public." *Id.* § 5080.23(d).

### C.    Procedural Background

On August 27, 2025, Plaintiffs filed this lawsuit. ECF No. 1. On November 18, 2025, Plaintiffs filed their Amended Complaint, the operative pleading in this case. ECF No. 8. The Amended Complaint asserts two causes of action for: (1) violation of Plaintiffs' First Amendment right to free speech; and (2) violation of Plaintiffs' Fourteenth Amendment right to equal protection. *Id.* ¶¶ 43–60. On November 26, 2025, Defendant filed the instant motion to dismiss. ECF No. 10. Plaintiffs filed an opposition and Defendant filed a reply. ECF Nos., 11, 12.

## II.    LEGAL STANDARD

### A.    Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted). Accordingly, it is "presumed that a cause lies outside this limited

jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). A motion to dismiss for lack of standing is properly brought as a challenge to the court's subject matter jurisdiction under Rule 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).

### B.      Failure to State a Claim under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Pleading facts "'merely consistent with' a defendant's liability" falls short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

///

///

///

///

25-cv-2215-RSH-BJW

## III.   ANALYSIS

### A.   Plaintiff Beck's Standing

Defendant first moves to dismiss plaintiff Beck for lack of Article III standing. ECF No. 10-1 at 17–19. Specifically, Defendant argues Beck lacks standing because she has not alleged an injury to herself. *Id*. Plaintiffs respond the Amended Complaint sufficiently alleges that, because Beck is herself a surf instructor, Section 4331's regulations affect her personally. ECF No. 11 at 11–14.

"The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others." *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993); *see Kaahumanu v. Hawaii*, 682 F.3d 789, 798 (9th Cir. 2012). In this case, Plaintiffs seek declaratory relief, injunctive relief, and attorneys' fees and costs. ECF No. 8 at 10–11. While Defendant moves to dismiss Beck for lack of standing, Defendant does not challenge Wavehuggers' standing to pursue the relief sought in Plaintiffs' lawsuit. *See* ECF Nos. 10-1; 12. Under these circumstances, the Court need not address Defendant's standing arguments as to plaintiff Beck. *See Nat'l Ass'n of Optometrists & Opticians Lenscrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009) ("[I]n an injunctive case this court need not address standing of each plaintiff if it concludes that one plaintiff has standing."); *see also Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) ("Only injunctive relief is sought, and for that only one plaintiff with standing is required[.]"); *Coal. on Homelessness v. City & Cnty. of San Francisco*, No. 22-CV-05502-DMR, 2023 WL 3637032, at *3 (N.D. Cal. May 23, 2023) (holding that under similar circumstances, "Ninth Circuit law dictates that the court need not address Defendants' standing arguments as to the individual plaintiffs").

### B.   First Amendment (Claim 1)

#### 1.   *Scope of Plaintiffs' First Amendment Challenge*

In Claim 1 of the Amended Complaint, Plaintiffs allege that Section 4331: (1) constitutes a content-based restriction of protected expression that suppresses Plaintiffs'

speech in "educational, professional, and therapeutic contexts"; and (2) imposes an unconstitutional prior restraint on speech. ECF No. 8 ¶¶ 46–47.

The Court first considers whether Plaintiffs assert a facial or as-applied First Amendment challenge to Section 4331. *See Doe v. Reed*, 561 U.S. 186, 194 (2010) ("It is important at the outset to define the scope of the challenge before us."). The classification of a challenge "as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy[.]'" *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). "An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). In contrast, a facial challenge contends that a law is either "unconstitutional in every conceivable application" or that "it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad." *Id.*

Here, both Plaintiffs' Amended Complaint and their briefing make clear that they are asserting an as-applied challenge to Section 4331. In their Amended Complaint, Plaintiffs seek to declare Section 4331 unconstitutional and enjoin its application only as applied to their conduct. *See* ECF No. 8 at 10 (requesting a declaration that Section 4331 "as applied to Plaintiffs, violates the First and Fourteenth Amendments to the U.S. Constitution" and an injunction "restraining Defendant and Defendant's officers, agents, affiliates, servants, successors, employees, and all other persons in active concert or participation with Defendant from enforcing Cal. Code Regs. tit. 14, § 4331 against Plaintiff"). Plaintiffs likewise characterize their First Amendment claim as as-applied in their briefing. *See* ECF No. 11 at 22 ("*In this as-applied case*, the regulation is not supported by a substantial governmental interest") (emphasis added).

Because Plaintiffs raise an as-applied challenge, the Court views this case through "the specific prism of [Plaintiffs'] expressive conduct"—the surf lessons Plaintiffs conduct on state beaches. *See Porter v. Gore*, 354 F. Supp. 3d 1162, 1175 (S.D. Cal. 2018).

///

25-cv-2215-RSH-BJW

### 2. First Amendment, Generally

"The First Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides: '[The States] shall make no law ... abridging the freedom of speech.'" *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024) (quoting U.S. Const. amend. I); *Lovell v. Griffin*, 303 U.S. 444, 450 (1938) ("Freedom of speech and freedom of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action."). In the Ninth Circuit, courts typically assess a First Amendment claim in three steps. First, a court must decide "whether the relevant speech is protected by the First Amendment[.]" *Meinecke*, 99 F.4th at 521 (internal quotation marks omitted). Second, the court "must identify the nature of the forum." *Id.* Finally, the court "must assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Id.*; *see Kaahumanu*, 682 F.3d at 798.

### a. Whether Surf Lessons are Protected Speech

Based on the framework outlined above, the Court first considers whether teaching surf lessons is speech protected under the First Amendment.

"[T]he First Amendment's protections for speech encompass situations where a teacher's 'speech to [students] imparts a 'specific skill' or communicates advice derived from 'specialized knowledge.'" *Hubbard v. City of San Diego*, 139 F.4th 843, 850 (9th Cir. 2025) (quoting *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1069 (9th Cir. 2020)). Relatedly, "when there is a speaker who is willing to convey ... information, state restriction[s] of the right to receive information produce actual injury under the First Amendment." *Pac. Coast Horseshoeing Sch.*, 961 F.3d at 1069 (internal quotation marks omitted).

Here, Defendant does not meaningfully dispute that the provision of surf lessons is protected speech within the scope of the First Amendment. *See* ECF No. 10-1 at 20 ("Section 4331 is a constitutional restriction on commercial speech, including as applied

to Plaintiffs and their commercial surf lessons."). The Court therefore proceeds on the understanding that Plaintiffs' surf instruction constitutes protected speech, which is consistent with precedent recognizing instruction in specialized skills to be protected expression. *See Hubbard*, 139 F.4th at 847 ("Teaching yoga is protected speech."); *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1069 (9th Cir. 2020) ("[V]ocational training is speech protected by the First Amendment."); *see also Murchison v. City of Newport Beach, California*, No. 8:25-CV-00155-FWS-DFM, 2025 WL 1723167, at \*4 (C.D. Cal. May 28, 2025) ("Because the Ordinance restricts Plaintiff's ability to provide paid surfing and [stand-up paddleboarding] lessons, the court finds Plaintiff adequately alleges that the Ordinance restricts Plaintiff's speech.").

### b. Nature of the Forum

The Court next looks to the nature of the forum at issue. "The Supreme Court has constructed an analytical framework known as 'forum analysis' for evaluating First Amendment claims relating to speech on government property." *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003). Under this approach, the Court looks to whether the property at issue "is a traditional public forum, a designated public forum, or a nonpublic forum in order to ascertain what level of scrutiny to apply to restrictions on speech." *Id.* at 1098. "A public forum is a place that has 'traditionally been available for public expression,' such as public streets and parks." *PMG Int'l Div., L.L.C. v. Rumsfeld*, 303 F.3d 1163, 1169 (9th Cir. 2002) (quoting *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992)). "A designated public forum is a nontraditional forum that the government has opened for expressive activity by part or all of the public." *Children of the Rosary v. City of Phx.*, 154 F.3d 972, 976 (9th Cir. 1998). "All other public property is characterized as 'nonpublic.'" *PMG Int'l Div.*, 303 F.3d at 1170.

Here, Plaintiffs contend state beaches are traditional public forums. ECF No. 11 at 15. Defendant does not meaningfully address this point. *See* ECF No. 12. On the limited record before it, the Court assumes for purposes of its analysis that the state beaches at issue here are public forums. *See Hubbard*, 139 F.4th at 850 ("[T]he City's shoreline

parks are traditional public forums."); *Kaahumanu*, 682 F.3d at 800 (assuming without deciding that unencumbered state beaches in Hawaii are traditional public forums); *see also Smith v. City of Fort Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999) (holding an area consisting of beach and sidewalk spaces to be a public forum).

### c.    *Content-Based/Content-Neutral*

Finally, the Court considers "whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985). To determine the relevant standard, the Court must examine whether Section 4331 is a content-based or content-neutral restriction. *See Porter v. Martinez*, 64 F.4th 1112, 1121 (9th Cir. 2023) ("When considering a First Amendment challenge to a law regulating expression in a public forum, we ask first whether the law is content based or content neutral.").

Plaintiffs contend Section 4331 constitutes a content-based restriction subject to strict scrutiny. ECF No. 11 at 18. Alternatively, Plaintiffs argue that even if Section 4331 is deemed content-neutral, it is not a valid time, place and manner restriction. *Id.* at 17–28. In contrast, Defendant argues that Section 4331 may be upheld under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980) as a valid restriction on commercial speech or as a content-neutral time, place, and manner restriction. ECF No. 10-1 at 20–31.

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *see Recycle for Change v. City of Oakland*, 856 F.3d 666, 670 (9th Cir. 2017) ("A content-based law is one that 'target[s] speech based on its communicative content' or 'applies to particular speech because of the topic discussed or the idea or message expressed.'") (quoting *Reed*, 576 U.S. at 163). "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Honolulu Weekly, Inc. v. Harris*, 298 F.3d

1037, 1043 (9th Cir. 2002).[2]

The Supreme Court's decision in *Heffron v. Int'l Soc'y for Krishna Consciousness,* 452 U.S. 640 (1981) is instructive here. *Haffron* was directed to a regulation requiring that "all persons, groups or firms which desire to sell, exhibit or distribute materials" at a state fair do so only from fixed locations on the fairgrounds. 452 U.S. at 643–44. Despite the fact that the regulation concerned sales and solicitations, *Haffron* held that the regulation was content-neutral as it applied "evenhandedly to all who wish to distribute and sell written materials or to solicit funds." *Id.* at 649.

The Ninth Circuit's decisions in *Kaahumanu* and *Honolulu Weekly* are also instructive. In *Kaahumanu*, the Court of Appeals considered the constitutionality of the State of Hawaii's permit requirement for "commercial activities of any kind" on encumbered Hawaiian public land. 682 F.3d at 793–94. Commercial activity was defined by regulation as "the use of or activity on state land for which compensation is received by any person for goods or services or both rendered to customers or participants in that use or activity." *Id.* at 794. The Court of Appeals held that the permitting regulations were "content neutral" because the requirement to obtain a permit was triggered by the commercial nature of the activity, not by the content of the speech. *Id.* at 805.

Similarly in *Honolulu Weekly*, the Court of Appeals considered the constitutionality of an ordinance requiring publishers who wished to distribute their publications along sidewalks in the Waikiki Special District to use one of two sets of newsracks—one designated for free and another designated for paid publications. 298 F.3d at 1041. The Court of Appeals held the ordinance was content-neutral as it set up "a system

---

[2] Generally, courts "apply the most exacting form of review—strict scrutiny—to determine the validity of a content-based restriction on speech." *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1121 (9th Cir. 2020). "But this is not an absolute rule, and some categories of speech receive reduced protection." *Id.*; *see United States v. Swisher*, 811 F.3d 299, 313 (9th Cir. 2016) ("Even if a challenged restriction is content-based, it is not necessarily subject to strict scrutiny."). One such category is commercial speech. *Id.* at 1121.

25-cv-2215-RSH-BJW

that segregates publications into two classes based on whether or not the publisher charges its readers, not on the content of the publications." *Id.* at 1044.

Here, Section 4331 is most properly characterized as content-neutral. The regulation applies to individuals who "solicit, sell, hawk, or peddle any goods, wares, merchandise, services, liquids, or edibles for human consumption or distribute circulars in any unit, except as permitted by the Department." Cal. Code Regs. tit. 14, § 4331. As in the above cases, this obligation to obtain a permit is triggered solely by the commercial nature of the activity, not by any message or viewpoint expressed. There is no evidence that the State adopted the regulation because of agreement or disagreement with the content of any message. Indeed, as Plaintiffs themselves acknowledge, Section 4331 would not restrict unpaid surf instruction or purely recreational surfing. ECF No. 8 ¶¶ 55–56; 11 at 24. As the Ninth Circuit has reasoned: "not every regulation that turns on the content of speech in the loosest sense is content based in the constitutional sense. A regulation may remain content neutral despite touching on content to distinguish between classes or types of speech—such as speech that constitutes solicitation." *Project Veritas v. Schmidt,* 125 F.4th 929, 950 (9th Cir. 2025).

In sum, Section 4331 conditions the requirement to obtain a permit on the commercial nature of the activity, rather than on the substance or viewpoint of any message conveyed and is most properly understood as a content-neutral regulation.

### d. Commercial Speech

The Court relatedly rejects Defendant's argument that as applied to Plaintiffs, Section 4331 regulates commercial speech. ECF No. 10-1 at 21 ("As applied to Plaintiffs' particular circumstances, their speech fits the second and third factors" governing commercial speech).

"Commercial speech is 'usually defined as speech that does no more than propose a commercial transaction.'" *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (quoting *United States v. United Foods*, 533 U.S. 405, 409 (2001)); *Cent. Hudson*, 447 U.S. at 561 (stating commercial speech is "expression related solely to the economic

25-cv-2215-RSH-BJW

interests of the speaker and its audience"). Nevertheless, "courts view this definition [as] just a starting point" and "instead try to give effect to a common-sense distinction between commercial speech and other varieties of speech." *Id.* at 1115.

In *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983), the Supreme Court identified three factors relevant to determining whether speech constitutes commercial speech. Under *Bolger*, "[w]here the facts present a close question, 'strong support' that the speech should be characterized as commercial speech is found where [1] the speech is an advertisement, [2] the speech refers to a particular product, and [3] the speaker has an economic motivation." *Hunt v. City of L.A.*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger*, 463 U.S. at 66–67).

Here, Plaintiffs allege they do not solicit business in-person, but instead market their services online where prospective students may book a lesson. ECF No. 8 ¶ 42. As alleged, by the time lessons are taking place, students have already agreed to enroll in them. The surf lessons themselves therefore do not propose a commercial transaction. For these reasons, the Court "need not reach the *Bolger* factors." *See IMDb.com*, 962 F.3d at 1122. Moreover, nothing in the record indicates that the surf lessons themselves were an advertisement or referred to a particular product. And although Plaintiffs had a financial interest in providing such lessons, "economic motive in itself is insufficient to characterize [speech] as commercial[.]" *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 960 (9th Cir. 2012).[3]

---

[3] Regardless, the *Central Hudson* test is "substantially similar" to the time, place and manner analysis that the Court applies below. *See Valle Del Sol Inc. v. Whiting,* 709 F.3d 808, 826 (9th Cir. 2013) ("[T]he test for commercial speech is substantially similar to the application of the test for validity of time, place, and manner restrictions[.]"). Both are intermediate levels of scrutiny. *See Contest Promotions, LLC v. City & Cty. of S.F.*, 874 F.3d 597, 601 (9th Cir. 2017) ("Restrictions on commercial speech are subject to intermediate scrutiny[.]"); *Int'l Soc'y for Krishna Consciousness of Cal., Inc. v. City of L.A.*, 764 F.3d 1044, 1049 (9th Cir. 2014) (holding that a time, place and manner test embodies "an intermediate level of scrutiny.").

25-cv-2215-RSH-BJW

#### e.    Time, Place and Manner

Having determined that Section 4331 constitutes a content-neutral restriction on speech, the Court next determines whether it is a valid time, place and manner restriction. "[T]he government in public fora may impose reasonable, content-neutral restrictions on the time, place, or manner of protected speech so long as those limits are 'narrowly tailored to serve a significant governmental interest' and 'leave open ample alternative channels for communication of the information.'" *Krishna (LA)*, 764 F.3d at 1049 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)); *Kaahumanu,* 682 F.3d at 802–03 ("[R]easonable time, place, [and] manner restrictions on speech are permissible in a traditional public forum.") (internal quotation marks omitted). The Court analyzes each of these requirements below.

#### i.    Narrowly Tailored

"For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not burden substantially more speech than is necessary to further the government's legitimate interests." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (internal quotation marks omitted). "Such a regulation, unlike a content-based restriction of speech, need not be the least restrictive or least intrusive means of serving the government's interests." *Id.* (internal quotation marks omitted). "But the government still may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* (internal quotation marks omitted).

Defendant asserts Section 4331 serves a significant governmental interest in promoting the "safety and convenience of the general public in the use and enjoyment of, and the enhancement of recreational and educational experiences at, units of the state park system" and is narrowly tailored to further that interest through the issuance of concession contracts that limit overcrowding, prevent commercial exploitation, and maintain the natural character of state parks. ECF No. 10-1 at 23 (quoting Cal. Pub. Res. Code § 5080.03). Although Plaintiffs agree "in the abstract" that Defendant has an interest in "protecting and properly managing park lands," Plaintiffs contend Defendant has not met

15

its burden of demonstrating that Section 4331 is narrowly tailored to address this interest. ECF No. 11 at 23–26. In particular, Plaintiffs argue Defendant has offered no explanation or evidence as to how Plaintiffs' conduct—the provision of paid surf lessons—undermines the State's interests. *Id.* at 23–24. Plaintiffs further contend Defendant has not addressed why less restrictive alternatives—such as designating specific areas of the beach or times in which commercial instruction is restricted—would not adequately address these interests. *Id.* at 24–26.

Here, the Court agrees that the government has a legitimate interest in regulating commercial activity on public beaches. *See Thomas v. Chi. Park Dist.*, 534 U.S. 316, 322, (2002) (holding object of ordinance requiring individuals to obtain a permit before conducting large-scale events at public parks was "not to exclude communication of a particular content, but to coordinate multiple uses of limited space, to assure preservation of the park facilities, to prevent uses that are dangerous, unlawful, or impermissible … and to assure financial accountability for damage caused by the event"); *Kaahumanu*, 682 F.3d at 803 (permit system "reasonably designed to minimize conflicting uses of limited beach area and to conserve the physical resource of the beaches"); *Stewart v. City & Cty. of S.F., Cal.*, 608 F. Supp. 3d 902, 914 (N.D. Cal. 2022) ("It is undisputed that the government has a significant interest in regulating public places").

Nevertheless, Defendant "bears the burden of showing that the remedy it has adopted does not burden substantially more speech than is necessary to further" this legitimate interest. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 948 (9th Cir. 2011). Rather than meaningfully responding to Plaintiffs' arguments, however, Defendant instead argues Plaintiffs have not pleaded facts "relating to the state interests supporting Section 4331." ECF No. 12 at 12. This misapprehends Defendant's burden. *See Comite*, 657 F.3d at 948.

Likewise, Defendant's mere assertion that "restrictions on commercial activities in state parks through concession contracts advance government interests in protecting the parks for the use and enjoyment of park visitors" is, by itself, insufficient to meet its burden

of showing that Section 4331 is narrowly tailored. ECF No. 10-1 at 24; *see Turner Broad. Sys. v. FCC*, 512 U.S. 622, 664 (1994) ("When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply posit the existence of the disease sought to be cured. It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.") (internal quotation marks and citation omitted).

At this stage of these proceedings, based on the limited record before it, the Court cannot conclude as a matter of law that Section 4331 is narrowly tailored. *See Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 653 (9th Cir. 2007) (reversing district court's denial of a preliminary injunction where district court's "findings that the City's ordinance furthered a sufficient government interest ... rested on hypothetical situations not derived from any record evidence or governmental findings"); *Murchison*, 2025 WL 1723167, at *5 ("At this stage of the proceedings, the court cannot conclude that the Ordinance was narrowly tailored. While Defendant raises legitimate government interests such as public safety and welfare, Defendant fails to provide sufficient evidence or explain how the Ordinance is narrowly tailored towards these interests."); *Dorsett v. City of San Diego*, No. 24-CV-00813-AJB-AHG, 2025 WL 591073, at *12 (S.D. Cal. Feb. 24, 2025) ("At the motion to dismiss stage, accepting Plaintiffs' allegations as true, and construing all inferences in favor of Plaintiffs, without any evidence from the City proving otherwise, the Court cannot conclude as a matter of law that the City's expressive activity areas are narrowly tailored."); *Porter*, 354 F. Supp. 3d at 1176–79 (denying motion to dismiss where defendant had not met its burden of demonstrating regulation was narrowly tailored).

### ii.    *Open Ample, Alternative Channels*

A valid time, place and manner regulation must also "leave open ample alternative channels for communication." *Hoye v. City of Oakland*, 653 F.3d 835, 844 (9th Cir. 2011). "Several considerations are relevant to this analysis." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1025 (9th Cir. 2009). "First, [a]n alternative is not ample if the speaker is not permitted to reach the intended audience." *Id.* (internal quotation

marks omitted). "Second, if the location of the expressive activity is part of the expressive message, alternative locations may not be adequate." *Id.* "Third, [a court] consider[s] the opportunity for spontaneity in determining whether alternatives are ample[.]" *Id.* "Fourth, [a court] consider[s] the cost and convenience of alternatives." *Id.*

Here, Defendant contends Section 4331 leaves open ample alternative channels for communication as it applies only to surf lessons provided on a commercial basis on CDPR "units," leaving Plaintiffs and other businesses free to operate at other beaches throughout California. ECF No. 10-1 at 27. Plaintiffs respond that the mere fact they may teach—or may have previously taught—paid surf lessons outside of state beaches does not establish that the regulation leaves open ample alternative channels of communication, particularly as non-state beaches may impose their own restrictions. ECF No. 11 at 19.

On the present record, the Court cannot conclude as a matter of law that Section 4331 leaves open ample alternative channels for communication. There is no evidentiary record, for example, as to the extent of beach areas covered by Section 4331 or the practical feasibility of conducting commercial surf lessons at alternative locations. "Additional factual development is required to determine whether the proposed alternative means of communication are indeed adequate." *Venice Justice Comm. v. City of L.A.*, 205 F. Supp. 3d 1116, 1126 (C.D. Cal. 2016); *see also Dorsett*, 2025 WL 591073, at *12 (denying motion to dismiss and reasoning that defendant's arguments with respect to whether there were ample alternative channels of communication "may be better suited following discovery when the record is more fully developed"); *NAACP v. City of San Jose*, 562 F. Supp. 3d 382, 400 (N.D. Cal. 2021) ("[O]n the present motion to dismiss for failure to state a claim, the court has no evidentiary record before it, and thus does not have adequate means of determining whether the challenged [regulation] was narrowly tailored or whether it left open ample alternative channels for communication. That reason alone warrants denial of defendants' motion to dismiss.").

///

///

25-cv-2215-RSH-BJW

### 3.    Conclusion

For the reasons stated above, the Court concludes Plaintiffs have sufficiently alleged an as-applied First Amendment challenge to Section 4331 and **DENIES** Defendant's motion to dismiss Plaintiffs' First Amendment claim.[4]

## C.    Fourteenth Amendment (Claim 2)

In Claim 2 of the Amended Complaint, Plaintiffs allege that Section 4331 creates an "arbitrary and irrational distinction" between paid and unpaid surf lessons on state beaches in violation of Plaintiffs' rights to equal protection under the Fourteenth Amendment. ECF No. 8 ¶¶ 55–57. Plaintiffs characterize this as an as-applied challenge. ECF No. 11 at 30 ("And as alleged, it is unlikely that either concern can be supported *in this as-applied case* … *[I]n this as-applied case* there are no 'street peddlers and hawkers' and the 'charm and beauty' of state beaches is thus not at risk from disruption by them.") (emphasis added).

### 1.    Level of Scrutiny

"The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (internal quotation marks omitted). "In determining whether a statute, regulation, or ordinance violates the Equal Protection Clause of the United States Constitution" the Court begins its analysis "by determining the proper level of scrutiny to apply for review." *Honolulu Weekly*, 298 F.3d at 1047. The Court applies strict scrutiny "if the governmental enactment 'targets a suspect class or burdens the exercise of a fundamental right.'" *Id.* (quoting *United States v.*

---

[4]    Having found that Plaintiffs have plausibly alleged that Section 4331 constitutes an invalid time, place, and manner restriction, the Court declines to address Plaintiffs' alternative theory the regulation operates as an unconstitutional prior restraint. Notably, Plaintiffs have not identified authority explaining how such an unbridled-discretion prior-restraint theory is properly brought in the context of this as-applied challenge. *See Epona, Ltd. Liab. Co. v. Cty. of Ventura*, 876 F.3d 1214, 1221–22 (9th Cir. 2017) (characterizing plaintiff's argument that an ordinance vested defendant with excessive discretion under the First Amendment to be a facial challenge); *Real v. City of Long Beach*, 852 F.3d 929, 933–34 (9th Cir. 2017) (same); *Kaahumanu*, 682 F.3d at 802 (same).

*Hancock,* 231 F.3d 557, 565 (9th Cir. 2000)). "If the ordinance does not concern a suspect or semi-suspect class or a fundamental right" the Court instead applies "rational basis review and simply ask[s] whether the ordinance is rationally-related to a legitimate governmental interest." *Id*. (internal quotation marks omitted).

Here, Plaintiffs contend Section 4331 is a content-based regulation that infringes on their fundamental rights to free speech under the First Amendment. ECF No. 11 at 28. This Court has already determined, however, that Section 4331 is content-neutral. Accordingly, the Court applies rational basis review. *See Maldonado v. Morales*, 556 F.3d 1037, 1048 (9th Cir. 2009) ("[S]trict scrutiny under the Equal Protection Clause is inappropriate where a law regulating speech is content-neutral[.]"); *Honolulu Weekly*, 298 F.3d at 1048 (holding strict scrutiny "not appropriate" for equal protection analysis where the court had already determined the ordinance was content-neutral).

### 2. *Rational Basis Review*

Under rational basis review, "[a] law is presumed to be valid and will be sustained under rational basis review if it is rationally related to a legitimate state interest." *Tingley v. Ferguson*, 47 F.4th 1055, 1077 (9th Cir. 2022) (internal quotation marks omitted). To determine whether a statute or regulation can survive rational basis review, the Court applies a "two-tiered inquiry." *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018). First, the Court "must determine whether the challenged law has a legitimate purpose." *Id.* Second, the Court addresses "whether the challenged law promotes that purpose." *Id.*

"Rational basis review is highly deferential to the government, allowing any conceivable rational basis to suffice." *Id.* The test "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (internal quotation marks omitted). "Nor does it authorize the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Id.* (internal quotation marks omitted). "Where there are plausible reasons for [legislative]

action, [a court's] inquiry is at an end." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004) (internal quotation marks omitted).

Here, the CDPR plainly has a legitimate interest in regulating activity on public beaches. Defendant argues Section 4331 is rationally related to the State's asserted interests because the permitting process: (1) moderates the number of individuals who can use CDPR units at any one time; (2) minimizes conflicting uses of limited beach areas; (3) conserves the physical resources of the beaches; (4) improves safety and aesthetics by limiting capacity to safe levels; and (5) prevents over-commercialization. ECF No. 10-1 at 32. Plaintiffs concede it is "theoretically possible" that Section 4331 "could improve safety on state beaches by limiting 'over-commercialization,'" but argue Section 4331 cannot survive rational basis review because Defendant has not offered evidence that paid surfing lessons actually cause conflicting uses of state beaches or over-commercialization. ECF No. 11 at 29–31. This argument misapprehends both Defendant's burden and the applicable standard.

"[T]he burden is on the [party] attacking the legislative arrangement to negative every conceivable basis which might support it[.]" *Heller*, 509 U.S. at 320 (internal quotation marks omitted). "Even in the context of a motion to dismiss, a plaintiff alleging an equal protection violation must plead a claim that establishes that there is not any reasonable conceivable state of facts that could provide a rational basis for the classification." *Dairy v. Bonham*, No. C-13-1518 EMC, 2013 WL 3829268, at *6 (N.D. Cal. July 23, 2013) (internal quotation marks omitted). Rather than negating every conceivable basis supporting Section 4331, Plaintiffs acknowledge Section 4331 could advance the legitimate governmental interest of improving safety by limiting over commercialization. ECF No. 11 at 30.

While Plaintiffs argue Defendant has not produced evidence that restricting paid surf lessons would advance these interests, in a rational basis review, "a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns*, 508 U.S. 307, 315 (1993). The

Court does not "require that the government's action actually advance its stated purposes, but merely look[s] to see whether the government could have had a legitimate reason for acting as it did." *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1141 (9th Cir. 2011).  Even if the relationship between regulating paid surf lessons and the asserted state interest was debatable here, the Court "must accept a legislature's generalizations even when there is an imperfect fit between means and ends; mathematical nicet' is not required." *Taylor v. Rancho Santa Barbara*, 206 F.3d 932, 935 (9th Cir. 2000) (internal quotation marks omitted).

For these reasons, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' Fourteenth Amendment claim **WITHOUT LEAVE TO AMEND**.[5]

## IV.  CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion as follows:

1.  The Court **DENIES** Defendant's motion to dismiss Claim 1.

///

///

///

///

---

[5]  "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992) (internal quotation marks omitted). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* Here, however, the defect in Plaintiffs' Fourteenth Amendment equal protection claim cannot be cured by further amendment. *See McGuire v. Roseville Joint Union High Sch. Dist.,* No. 23-16169, 2026 WL 36171, at *3 (9th Cir. Jan. 6, 2026) (affirming district court's dismissal of equal protection claim without leave to amend); *Laws. For Fair Reciprocal Admission v. United States,* 141 F.4th 1056, 1074 (9th Cir. 2025) (same).

2.    The Court **GRANTS** Defendant's motion to dismiss Claim 2 **WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Dated: February 24, 2026

_____
Hon. Robert S. Huie
United States District Judge

25-cv-2215-RSH-BJW